# The North Pennsylvania Railroad Company *versus* Rehman.

*Action for damages not sustained against railroad company for cattle killed or injured upon the track at crossing of public road.*

An owner of mules killed upon the track of a railroad company by an engine and cars, cannot recover damages therefor, though they escaped from a properly fenced enclosure without his knowledge, and were on the highway at its intersection with the track, at the time of the accident.

ERROR to the District Court of *Philadelphia.*

This was an action of trespass on the case, by Charles Rehman against the North Pennsylvania Railroad Company, for negligence in killing two mules belonging to the plaintiff.

The plaintiff's mules were killed at the crossing of Nicetown lane and the North Pennsylvania Railroad.

The mules had escaped in the night from a pasture adjoining the railroad in which they were kept, the fences of which were proved to be in good order.

There was no evidence to show how they had escaped into the road. A witness for the plaintiff testified that he saw them in the morning lying on the side of the track without harness or

halter, one of them still alive, just after a train had passed, by which he supposed they were killed; and that no whistle or bell was sounded by the locomotive when approaching the crossing.

The defendants' witness, the engineer of the train which had passed up the previous night, testified the mules were struck by his locomotive the evening before, and that the whistle was sounded as he approached the crossing.

The counsel for the defendant below submitted to the court the following points:—

1. That as under the undisputed evidence in this cause, that the plaintiff's mules were killed while straying upon the defendants' track, the defendants are entitled to a verdict.

2. That the owner of cattle killed while straying upon a railroad, cannot recover damages from the company.

The court refused so to charge, but reserved the points submitted for the court in banc, and charged the jury as follows:—

"Railroad companies are not liable for inevitable accident. If the plaintiff took every care, the company was not liable, unless the accident occurred through their negligence; and the jury must be satisfied that the accident occurred through the negligence of the company," leaving the question of negligence to the jury.

There was a verdict in favour of the plaintiff.

In entering judgment upon the points reserved, the opinion of the court was delivered by SHARSWOOD, P. J., as follows:—

"This was an action to recover damages for the loss of two mules belonging to the plaintiff, by the alleged negligence of defendants. We must assume it as found by the verdict that these animals were at large on the highway without any fault or negligence of the owner—that in crossing the railroad they were struck by the locomotive and killed, and that this occurred through the negligence of the officers of the company defendants. The question reserved then is, whether any action can be maintained for an injury to cattle astray without fault or negligence of the owner? Had these mules been on the railroad track itself, and not at the crossing, The Railroad Company *v.* Skinner, 7 Harris 298, would have been an authority in point. But this case is different. The cattle having strayed without fault of the owner on a common road or highway, could not be said to be trespassing on the defendants. In approaching the crossing the agents of the company were bound to use all proper precautions to give warning of the approach of the train. It may be that the whistle would not have alarmed the mules, and driven them across the track. But the plaintiff ought to have the benefit of the chance that it might. If a man entirely deaf should be killed at a crossing, the train not being in sight, it would be no answer to a charge of negligence in not having sounded the whistle that he

would not have heard it. Somebody else might have warned him by sign of his danger. So in this case, some stranger hearing the whistle and seeing the danger of the mules, might have driven them across in time to avoid it. In short, there is no negligence in plaintiff—no trespass in his cattle—and negligence in the defendants' servants. There seems no reason, therefore, why the plaintiff should not recover. Indeed, the case of Bulkley v. New York Railroad Company, 27 Conn. 479, is exactly in point."

This writ was then sued out by defendants, for whom the following errors were assigned :—

1. The learned judge who tried the cause erred in refusing to charge the jury as requested by the counsel for the defendant below on his first point, viz. : "That as under the undisputed evidence in this cause, that the plaintiff's mules were killed while straying upon the defendants' track, the defendants are entitled to a verdict."

2. The learned judge who tried the cause erred in refusing to charge the jury as requested by the counsel for the defendant below in his second point, viz. : "That the owner of cattle killed while straying upon a railroad cannot recover damages from the company."

3. The court in banc erred in entering judgment for the plaintiff below on the points reserved.

*Morton P. Henry*, for plaintiff in error, argued : The law is as well settled in Pennsylvania as elsewhere, that the owner of cattle suffered to go at large, and which are killed or injured on the track of a railway, has no recourse against the company or its servants : Railroad Company v. Skinner, 7 Harris 298; Heil v. Glanding, 6 Wright 493.

The court therefore was in error in supposing that the verdict of the jury found that there was no negligence on the part of the plaintiff. This question was substantially reserved for the court in banc. The jury found negligence on the part of the defendants, reserving the question whether under the circumstances the plaintiff could recover.

It is no question of negligence or prudence on the part of the plaintiff. The presence of the mules on the track was an unlawful obstruction of the railway, which could be abated. If negligence existed on the part of the railway company, in reference to the warning to these mules, which is the only evidence of negligence against the company, a passenger might complain, but not their owner. The presence of his mules at a place where they had no right to be, contributed to the accident, and "the law has no scales or measure in such cases where wrongdoing weighed most in the compound that occasioned the mischief:"

[North Pennsylvania Railroad Co. v. Rehman.]

Railroad v. Norton, 12 Harris 465; Knight v. Abert, 6 Barr 472; Munger v. Tonawanda Railroad Company, 4 Comstock 349; Marsh v. The New York and Erie Railroad Company, 14 Barb. 364. .

A distinction is drawn by the court below between the case where cattle are killed while straying on the railroad track, and where the same accident occurs at a point where the railway crosses a highway. .

The principle upon which this distinction is drawn, is that the mules were lawfully on the highway at that point, for which the authority of the case in 27 Conn. 479 is cited. That case stands by itself. ·    ·· · 

Cattle straying upon a highway are unlawfully there; the use of a highway is to pass and repass. See Dovaston v. Payne, 2 H. Bl. 527; Regina v. Pratt, 4 El. & Bl. 860; Mills v. Stark, 4 New Hamp. 512; Avery v. Maxwell, 4 Id. 36.

The same principle is applied whenever cattle are unlawfully in the place where they are killed: Towns v. The Cheshire Railroad Company, 1 Am. Railway Cases 210; Ricketts v. The Dock Company, 12 E. L. & E. R. 520. In the two following cases the companies were held to be not liable at points where the railway crossed public highways: Mentges v. The New York and Harlaem Railroad, 1 Hilton, C. P. 425; O'Halloran v. The New York and Harlaem Railroad Company, 2 E. D. Smith Rep. 257.

*George H. Earle* and *R. P. White*, for defendant in error, argued, that the doctrine of Railroad v. Skinner, and the other cases cited by the plaintiff in error, were not applicable to this case, for the reason that here the cattle had escaped from a good enclosure without the knowledge of the owner, and were at the crossing of a public road over the railroad when they were killed: citing and relying on Beers v. Railroad, 2 Am. Railroad Cases 114; Bulkly v. Railroad, 27 Conn. 479; White v. Railroad, 10 Foster, N. H. 188; Railroad v. Davis, 18 Geo. 679; Blythe v. Birmingham Waterworks, 36 E. L. & E. Rep. 506; Curtis v. Rochester Railroad, 20 Barb. N. Y. 282; Sheffield v. Rochester Railroad, 21 Id. 339; Isabell v. N. Y. Railroad, 27 Conn. 393; Railroad v. Caldwell, 9 Ind. Rep. 397; 7 Casey 51.

The authorities cited upon the other side have no application to the facts of this case. They belong to two classes. The first rests upon the doctrine that railroads have a right to the exclusive possession of their own track, and to use the greatest possible speed upon it. The second rests upon the principle that no man is bound to fence out his neighbour's cattle, or to erect safeguards for them against perils which they may encounter whilst trespassing upon his land. Thus Munger v. Tonawanda Railroad, 4 Comstock; Marsh v. N. Y. and Erie Railroad, 14

[North Pennsylvania Railroad Co. v. Rehman.]

Barb., and Town v. Cheshire Railroad, 1 Am. Railway Cases 210, are all cases of cattle straying upon the railroad track, the exclusive possession and use of which the company had bought and paid for, and are put upon that express ground.

The cases of Mills v. Stark, 4 New Hampshire, Avery v. Maxwell, Ibid., belong to the second class, as where animals trespassing on the land of another, eat some hurtful substance, walk into a pit, or over a precipice. Mentger v. N. Y. and Harlaem, was probably decided on the same principle. In O'Halloran v. N. Y. and Harlaem Railroad, the decision rests on the ground that the horse was allowed by his owner carelessly and negligently to run at large in the public streets. In England, and in many of our states, it is illegal to allow cattle to be at large. This is not the law of Pennsylvania.

The whole subject of negligence, and the liability of railroads, is treated with great clearness and precision in Beers v. Housatonic Railroad, 2 Am. Railway Cases 114.

There is no distinction between railroads and ordinary highways in regard to the degree of care which the law requires of those who have the direction or management of vehicles upon them : Beers v. Housatonic, 2 Am. Railway Cases 114.

The only instruction asked for by the defendant below was that, as a matter of law, the owner of cattle killed when straying upon defendants' track cannot recover from the company.

The court was right in refusing so to charge, because the instruction was not applicable to the facts of this case. The mules were on the highway and not defendants' track. The whole question of negligence was properly referred to the jury.

There was evidence of gross negligence on the part of the defendants, and no evidence of negligence on the part of the plaintiff, unless the fact of the mules being there temporarily and without fault of the owner, in itself and as a matter of law, such negligence on the part of the owner as presented a bar to the action. This was the point reserved, and which, under the authorities cited, we think was rightfully decided in the negative by the court below.

The opinion of the court was delivered, February 24th 1865, by

THOMPSON, J.—It was conceded in argument, that the law is settled in this state, that if cattle are suffered to run at large, and are injured or killed on the track of a railroad, without wantonness, or such gross negligence as might amount to the same thing, the owner has no recourse against the company or its servants : Railroad Company v. Skinner, 7 Harris 298.

Two elements are said to exist in this case, which it is supposed modify, or, perhaps, render inapplicable altogether, the rule of that case, so far as it is concerned: namely, that the

[North Pennsylvania Railroad Co. *v.* Rehman.]

mules in question were not turned out to run at large, but were put into a field, with a good fence around it, on the evening previously to being killed, and escaped thence without the knowledge of the plaintiff; and *secondly*, that when they were struck by the defendant's engine, they were on the crossing of a public road over the railroad.

Do these elements distinguish the case in principle from Skinner's case? I do not think they do. It is asserted in that case in the clearest terms, without exception or limitation, in regard to the crossing of roads or streets, that cattle roaming on the track of a railroad are trespassing as regards the company, and if they are killed without wantonness or gross carelessness, the company is not to be answerable for the loss. Chief Justice Gibson said: "The company is a purchaser, in consideration of public accommodation and convenience, of the *exclusive* possession of the ground paid for to the proprietors of it, and hence, to use the greatest allowable rate of speed, with which neither the person nor property of another may interfere." This was a well-considered case; the doctrine is announced as of general application, and as such it has been generally accepted by the people, who have long since, in the neighbourhoods of railroads, especially in the thickly settled parts of the state, endeavoured to conform to it. It was undoubtedly by the application of the common law rule, which requires the owners of cattle to restrain them from trespassing, at their peril, that this conclusion was reached. That this is the rule, see Dovaston *v.* Payne, 2 H. Blackstone 517, 12 English Law & Eq. Rep. 520; In note, 25 Id. 373; Shelford on Railways 470, note 1; 5 Comstock 349; 4 N. H. Rep. 36, 512.

It is true by custom in Pennsylvania, owners of cattle are not liable to be sued for trespass on account of their roaming on unenclosed wood or waste lands. But to permit such roaming is hardly a right; it is a privilege or immunity rather, growing out of the inappreciable damage that would be done: Railroad *v.* Skinner, *supra;* Knight *v.* Abert, 6 Barr 472. The maxim *de minimis* in this particular controls—to avoid vexatious suits.

In trespass the rule undoubtedly is, that intent or ignorance is no defence. It does not *condone* the injury. Whether the damage be great or small, it is the unauthorized act that creates the liability; the damage is but an incident of the wrong. In harmony with this idea is the common law requirement, that every one must exercise his rights and privileges so as not to injure others. Hence, animals which have the propensity to trespass by breaking into enclosures, must be restrained at the peril of paying for their trespass by their duress: Dolph *v.* Ferris, 7 W. & S. 367.

It is settled with us beyond doubt, that railroad companies are

not bound to fence against cattle; and by the decision already cited and many others, that such companies have, and it is necessary to their existence that they should have, the complete and exclusive possession and entire control of their tracks, and are entitled, as against everybody and everything not lawfully on their road, to a clear track. It is quite apparent, if they are not obliged to fence against roaming cattle, that they are at the mercy of the public in this respect, unless the law will protect them. Railroad tracks are neither woodlands nor waste fields, and are not within the usage as to roaming cattle in such places. The common law steps in to protect the road and to protect those upon it, and, as in Skinner's Case, declares vagrant cattle upon it as trespassers. There are many authorities to this effect in England and in this country, but a few only will be referred to : 25 Eng. L. & Eq. Rep. 373; 5 Denio 255; 4 Comstock 369; 29 Maine 307; Shelford on Railways 507; 2 New Jersey 185; 4 N. H. 36, 514; 7 Id. 518. And it is also expressly laid down in many authorities that where no regulations to fence exist, such companies are governed by the rule of the common law. In addition to the cases just cited, in which is contained this doctrine, see also 2 Eng. L. & Eq. Rep. 289, 1 American Railway Cases 144–213, and note. Indeed the result is inevitable. A railroad in this state could not co-exist with the preservation of the usage to its full extent. Their speed would be destroyed in their attempts to keep the track clear ; and the lives of passengers put in jeopardy constantly, if they should disregard such precautions, as well as being subjected to what it would cost to pay for cattle killed or injured in case of disregarding them.

Whether, therefore, the plaintiff's mules escaped from an enclosed field or not, in view of the trespass on the defendants' road, I do not think makes any difference in this case. It was undisputed that they were on defendants' road without license. If so, they were there wrongfully—were trespassers. How can the owner separate his case from the wrong done by his cattle? Intention, nay, effort to prevent, will not make their occupancy of the track of the road lawful. If they were in fault, it was because their owner was in fault in not restraining them. He was bound to do it at his peril. He did not restrain them so as to prevent their being in the way of the defendants, and I see not how he can lawfully demand compensation in such an aspect of the case. The case of Knight v. Abert, 6 Barr 472, illustrates the idea. The plaintiff's cattle were unbidden on the woodlands of the defendant. One of them fell into an ore-pit and was killed. The owner charged negligence on the defendant for leaving it open, and the defendant replied that his cattle were trespassing, and he was not bound to take care of them, or to run the risk of injury if they came on his place without leave. This was held

to be a good defence, Gibson, C. J., saying: "He who suffers his cattle to go at large, takes upon himself the risks incident to it." So we think in this case, the risk was on the plaintiff, and if his cattle were not killed in wantonness or by gross neglect, he must abide the loss. There was not a particle of evidence of this in the case.

These views we think meet the first aspect of the case, but it was insisted on argument that the mules were on the common highway, at the point where it crosses the railroad, when they were killed by the defendants' engine and train, and therefore not trespassing. Highways are established to accommodate travel alone, and it can hardly be, that unattended and loitering cattle are within the class. True, they may not be taken up as strays because on the highway, nor the owner sued for trespass for that reason alone; but unreasoning and dumb, it is absurd to think of them in reference to rules governing the enjoyment of the easement of passing and repassing on a highway, among which is the duty to take care of the rights of others, and their own safety. Such being the case, as a general thing, it is negligence to permit them to wander where they may do as well as receive injury. This subject has received judicial notice in more than one case. In Dovaston *v.* Payne, already referred to, it was held in a plea in bar to an avowry for taking cattle *damage feasant*, that the cattle escaped from a public highway into the *locus in quo*, through a defect in the fences, it must show that they were *passing* along the highway when they escaped, and that it was not sufficient to aver that "*being* upon the highway they escaped." Buller, J., said: "Whether the plaintiff was a trespasser or not depends on the fact, whether he was *passing* or *repassing* and using the road as a highway; or whether his cattle were in the road as trespassers;" and that it was fatal to the plea to omit the averment of *passing* on the highway at the time of the escape into the defendant's close.

So in 4 Ellis & Black. 860, it was held that a person was rightly convicted of trespass under the statute of 1 & 2 Wm. 4, in regard to game, although he was in the highway when he fired at the bird as it flew over it. The ruling was, that as the evidence showed that the defendant was not in the road in the exercise of the right of way, but for another purpose, viz., in search of game, he was a trespasser on the lands of the adjoining owner through whose lands the road lay, and over which the public had only an easement for the purposes of travel.

In Avery *v.* Maxwell, 4 N. H., cited *supra* for another purpose, it was held that no one has a right to turn his horses or cattle into the highway to graze, except in those parts where he is the owner of the soil. And if a horse be turned into a road at another place, although fettered as required by law, if he

escape into an adjoining close *through a defect of fences* which the owner was bound to repair, yet the owner of the horse will be liable for the trespass. The same principle was asserted in Mills *v.* Stark, same book. Several authorities are to be found in a note on the same subject in Shelford on Railways, p. 507. We have numerous cases to the same effect in principle in our reports: 1 Yeates 167; 9 S. & R. 32; 6 W. & S. 378; 1 Barr 336; 8 Id. 294.

The learned judge below left the question of due care on part of the plaintiff in regard to the cattle, to the jury, telling them that if he was not guilty of negligence in that respect, or, in other words, if his field was sufficiently fenced, in which he turned his mules, and they escaped and were killed on the highway by negligence of the servants of the company, they would be liable to pay for them. In view of the authorities and reasons already given, we think this was wrong. It seems to us the company is as much entitled to a clear track at crossings, subject only to the right of travellers, as anywhere else; and if *couchant* or loitering cattle on such crossings have any legal rights as such, I am at a loss to discover from whence they are derived. The authorities are almost universally against the assumption. I do not mean by this that they may be wantonly destroyed even in such places, or that gross negligence in regard to them will be excused. Neither would it be excused in regard to trespassing cattle on enclosed fields. They may not be killed, or their safety entirely disregarded in that case. With this reservation arising out of sentiments of humanity and social duty, the law accords; but to go further would be to release owners from the appropriate care due to such property, and to injure the community in doing so.

Both the points I have thus noticed are embraced in the questions reserved by the court, but which it ultimately decided against the defendant. They are: "That under the undisputed evidence in this case, as the plaintiff's mules were killed while straying upon the defendants' track, the defendants are entitled to a verdict."

Second. "The owners of cattle killed while straying upon a railroad cannot recover damages from the company."

I do not suppose that these points were overruled because not properly qualified by the reservation that cattle must not be killed wantonly, or by such gross negligence as to amount to the same thing. There was nothing like that in the evidence—indeed it seems to me there was very slight evidence of any negligence whatever. Treating it therefore as a case of ordinary negligence at most, the question is, could the plaintiff under the circumstances recover? To say he could, is to deny the points; and in doing so, to affirm that straying cattle, standing, lying, or browsing on the track of a railroad, are lawfully there, so as to

exonerate the owner from all blame if he can show he was ignorant of their escape from his custody. We think we have shown that this is not the law; and I am sure if it were, it would encourage carelessness in regard to the care of animals, increase litigation, and greatly enhance the perils of railroad travel. The only way to secure the greatest safety in such a mode of travelling, is to hold all obstructions unlawful. Ordinary passage by the public over a railroad on a public highway is in no sense an obstruction, nor is the passage with droves or horses usually; but it is an unauthorized obstruction for roaming beasts to be there, and as the duty is on the owner to keep them away, he is in fault in failing to perform the duty, and cannot recover even if there were negligence on part of the railroad company's servants in killing them. Where there is mutual contributory negligence, neither party can recover for its consequences. The public have accepted the doctrine of Skinner's Case, and have to a considerable extent adapted their circumstances to it, and are constantly conforming more and more to it; but I am persuaded that the exception which this case would introduce, were we to affirm it, would in the end greatly impair, if not entirely overthrow, the rule itself, which I think all will admit is most wholesome.

The case of Bulkley *v.* The New York and New Haven Railroad Company, 27 Conn. R. 479, has been examined, and I do not think it entitled to the weight given to it below. If I understand the opinion of Ellsworth, J., the plaintiff in error failed to raise the questions of law which really belonged to the case. Certain it is, the case seems to have been but little discussed. Besides that, the railroad company appears to have been in default in not constructing cattle guards at the crossing of the public road, as they were bound by their act of incorporation to do, and the plaintiff's cattle being at large, not in contravention of the statute on that subject, the court below left it to the jury to say whether the plaintiff had exercised "ordinary care" in view of all the circumstances. It is certainly true that what is "ordinary care" varies essentially with circumstances. In conclusion we hold that the owner of the cattle is bound at his peril to keep his cattle off the railroad, and if he do not, the law treats him as negligent and not entitled to recover, excepting only in case of wanton injury or by gross carelessness. We think judgment should have been entered in favour of the defendants, *non obstante veredicto.*

And now, to wit, February 24th 1865, the judgment entered in the District Court is reversed, and judgment is here now entered in favour of the defendant, *non obstante veredicto,* with costs.