## Clapper v. Pennsylvania Railroad Company.

*Negligence—Railroads—Trespassing animals—Attractive nuisance—Poison on weeds—Cause of action.*

1. A trespasser upon the right of way of a railroad company, or the owner of trespassing animals, cannot recover damages for injuries sustained unless he shows gross or wanton negligence on the part of the railroad employees.

2. In an action to recover damages for the death of cattle, poisoned by eating weeds on the right of way of defendant railroad company upon which the company had spread large quantities of poison for the purpose of killing the weeds, it was not averred that the use of the poison would invite trespassing or that the railroad company had notice that such would be the reasonable effect of its act: *Held*, that the statement of claim did not set forth a cause of action.

Affidavit of defence raising questions of law. C. P. Blair Co., Oct. T., 1924, No. 54.

*Woodcock & Woodcock*, for plaintiff; *Riley & Hewit*, for defendant.

BALDRIGE, P. J., April 22, 1925.—The plaintiff seeks to recover damages he has sustained as the result of his cattle straying upon the right of way of the defendant company and being killed by eating weeds sprinkled with poison by the defendant company. It is averred in the plaintiff's statement that the defendant company spread over a large portion of its right of way, where it passes through the property of the plaintiff, a deadly poisonous substance for the purpose of destroying weeds, and that this poisonous substance had an odor and taste which was peculiarly attractive to animals; that the plaintiff's cattle had been placed in the field, which was securely closed by a wire fence which had a pair of substantial elm bars along the right of way of the defendant company; that the poisonous substance used by the defendant company so excited and attracted the plaintiff's animals that by their actions they loosenened and opened the bars and ate the forage that was saturated with poison. Therefore, this suit was brought.

A demurrer was filed by the defendant alleging that the facts set forth in the plaintiff's statement were insufficient in law to constitute a cause of action against the defendant.

A railroad company has the right of exclusive possession of its rights of way except at crossings: Buckley *v.* The B. & O. R. R. Co., 275 Pa. 360; and under the Act of April 4, 1889, P. L. 27, which revised the common law of Pennsylvania, owners of cattle are required to fence them in or keep them from trespassing: Barber *v.* Mensch, 157 Pa. 390; Erdman *v.* Gottshall, 9 Pa. Superior Ct. 295; but the railroad company is not required to fence its right of way: Railroad Co. *v.* Skinner, 19 Pa. 298. In the latter case, a number of cattle strayed upon the right of way of the railroad company and as a result thereof were injured or killed. The court held that the owner of the cattle had no recourse against the company. This principle was reaffirmed in the case of North Pennsylvania R. R. Co. *v.* Rehman, 49 Pa. 101, where mules escaped without the knowledge of the owner from a fenced enclosure and strayed on the highway at a railroad crossing and were killed by a passing engine. Judge Sharswood, who presided at the trial, held that there could be a recovery, as the facts were different from the case of Railroad Co. *v.* Skinner, 19 Pa. 298, in that the cattle were at a crossing on a common road or highway, and, therefore, could not be regarded as trespassers. The Supreme Court, reversing the lower court, held that railroad companies have complete, exclusive possession and entire control of their tracks as against everybody and everything, and cattle that stray upon their premises do so at

their peril; otherwise, the speed of the trains and the safety of the passengers and employees would be in constant jeopardy. Of course, if there was wilful and wanton negligence, then a different principle would be involved. In the case of Knight v. Abert, 6 Pa. 472, in delivering an opinion in a case where the defendant was the owner of unenclosed woodland and the plaintiff's ox had wandered thereon and had fallen into a pit and was killed, Mr. Chief Justice Gibson says: "But even if an owner of cattle had the right claimed for him, the tenant would not be bound to expend his money or his labour in preparing his land for the safe and convenient enjoyment of it. A man must use his property so as not to incommode his neighbour; but the maxim extends only to neighbours who do not interfere with it or enter upon it. He who suffers his cattle to go at large takes upon himself the risks incident to it. If it were not so, a proprietor could not sink a well or a sawpit, dig a ditch or a mill-race or open a stone quarry or a mine-hole on his own land except at the risk of being made liable for consequential damage from it—which would be a most unreasonable restriction of his enjoyment. He might as well be required to level a precipice, put a fence around a swamp or cut down reclining trees."

The plaintiff concedes these general principles, but contends that they do not apply when the defendant has done some act which would invite trespassing, and contends that this case comes under the rule applicable to "attractive nuisances," which is "a generic term applied to the great variety of things which may naturally be expected to allure young children upon private premises; one which has an especial attraction for children by reason of their childish instincts." This principle had its origin in the case of Lynch v. Nurdin, 1 Q. B. 29, and decided in 1841. It was recognized in this country in 1873 when the first "turn-table" case was decided by the Supreme Court of the United States, wherein it was held that a railroad company was liable in an action by a child of six years old who injured his foot while playing with a turn-table, notwithstanding the fact that the injured child was a trespasser and the company owed him no duty; this ruling was on the theory that a recovery may be had if the jury believe that children naturally would resort to a turn-table for the purpose of play, and that the defendant company should have anticipated that result from the fact that several boys were in play there when the accident occurred and had played there on other occasions within the observation and to the knowledge of the defendant's employees.

In order to bring a case, therefore, within the doctrine invoked by the plaintiff, it must appear that it was probable that the action of the defendant in using the poison would invite trespassing and that the railroad company had notice that that was the reasonable effect of their act. There were no such averments.

The plaintiff has called our attention to a line of cases where recovery has been allowed where a pile of salt was allowed to stand on the right of way: Brown v. Hannibal and St. Joseph R. R. Co., 27 Mo. App. 394; where cotton seed was permitted to accumulate along the right of way: Little Rock & S. F. R. R. Co. v. Dick, 52 Ark. 402. And in St. Louis I. M. & S. R. R. Co. v. Newman, referred to in 28 L. R. A., N. S., 83, which is an Arkansas case, oil was permitted to leak from a car upon the right of way and into the ditches near where the cattle had the right and were accustomed to graze. In Page v. N. C. R. R. Co., 71 N. C. 222, the hogs of the plaintiff were attracted by the drippings of molasses from the defendant's cars and were

Clapper v. Pennsylvania Railroad Company.

killed by the trains of the defendant which were suddenly started without. the usual alarm.

In the case of Devereux v. Phila. & Reading R. R. Co., 245 Pa. 136, which was an attempt to recover damages for the loss of horses killed on the right . of way, our Supreme Court said: "Counsel have called our attention to numerous cases in other jurisdictions in which a different rule has been adopted, but in most of these jurisdictions the question was controlled by statutory requirements. In many of the states railroad companies are required by statutes to fence their rights of way, and this being an impera- tive duty intended primarily as a protection to trespassing animals, the courts very properly held that the law was intended as a protection to the owners of such animals as happened to stray upon the railroad tracks, and that a higher degree of care was required on the part of railroad companies by reason thereof. . . . Our rule has always been that a trespasser upon the right of way of a railroad company, or the owner of trespassing animals, cannot recover damages for injuries sustained unless he shows gross or wanton negligence on the part of the railroad employees."

Gross negligence is not alleged, nor does it appear that the poison applied was of itself of such a nature, like salt or cotton seed oil, etc., as would be calculated to entice or attract animals, as appears in cases cited by plaintiff. The principle followed in our State has been recognized and extended in West Virginia, in the case of Kirk v. Norfolk & Western R. R. Co., 41 W. Va. 722, where the company used salt on its switches as an effective mode of freeing them from ice, and it was held that this did not render them liable for the killing by its train of the stock lured to the track by the salt.

The demurrer is sustained.

From Robert W. Smith, Hollidaysburg, Pa.