## Pennsylvania Railroad Company, Appellant, v. Pittsburg. Allegheny Valley Railway Company, Appellant, v. Pittsburg.

*Taxation—Railroads—Real estate—Right of way—City taxes—Statutes—Repeal—Acts of January 4, 1859, sec. 3, P. L. 828, and March 7, 1901, P. L. 20.*

Section 3 of the special Act of January 4, 1859, P. L. 828, relating to taxation of railroad property in the city of Pittsburg, is not repealed by the Act of March 7, 1901, P. L. 20, and is still in force; but in the light of prior judicial decisions, and the contemporaneous construction of the act, as shown by the fact that for nearly half a century after its passage no attempt was made by the city of Pittsburg to assess for taxation the rights of way of a railroad, it must be deemed that it was not the intention of the legislature to include within the meaning of the words "real estate" as used in the statute the ground comprised within the rights of way.

The legal conception of a railroad as a public highway has never been changed. As such it has a franchise not included under general words, authorizing taxation of property, real or personal.

Argued Nov. 13, 1907. Appeal, Nos. 216 and 217, Oct. T., 1907, by plaintiffs, from decrees of C. P. No. 1, Allegheny Co., June T., 1907, Nos. 201 and 202, dismissing bills in equity in cases of Pennsylvania Railroad Company v. City of Pittsburg and John F. Steel, Treasurer of said city, and Allegheny Valley Railway Company v. City of Pittsburg and John F. Steel, Treasurer of said city. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Reversed.

Bills in equity for an injunction to restrain the city of Pittsburg from collecting taxes on real estate included within the rights of ways of railroad companies.

The opinion of the Supreme Court states the case.

The court entered decrees dismissing the bills.

*Error assigned* was decrees dismissing the bills.

*M. W. Acheson, Jr.,* of *Patterson, Sterrett & Acheson,* for appellants.—The railroad rights of way are not subjected to taxation by the act of 1850 : Western New York, etc., R. R. Co. v. Venango County, 183 Pa. 618 ; Pittsburg Railway Co. v. Pittsburg, 211 Pa. 479 ; State v. District Court of Ramsey County, 31 Minn. 354 ; Georgia v. Atlantic, etc., R. R. Co., 3 Woods, 434 ; Worcester v. R. R. Co., 45 Mass. 564 ; Fox's App., 112 Pa. 337.

The meaning publicly given by contemporary or long professional usage, is presumed to be the true one, even when the language has etymologically or popularly a different meaning : Com. v. Paine, 207 Pa. 45 ; Price v. Lancaster County, 189 Pa. 95 ; Leh's Election, 6 Pa. Dist. Rep. 152 ; Stuart v. Laird, 5 U. S. 299 ; Packard v. Richardson, 17 Mass. 122.

The Act for the government of cities of the second class, approved March 7, 1901, P. L. 20, repealed section 3 of the act of 1859 : Com. v. Kelly, 5 Kulp, 533 ; Lehigh Iron Co. v. Lower Macungie Twp., 81 Pa. 482 ; Harrisburg v. Harrisburg Gas Co., 31 Pa. Superior Ct. 530 ; Com. v. Brown, 210 Pa. 29.

*A. M. Thompson,* with him *W. B. Rodgers* and *Chas. K. Robinson,* for appellees.—The third section of the act of 1859, entitled "an act to enable the city of Pittsburg to raise additional revenue," is in force: Com. v. Brown, 210 Pa. 29; Brown v. County Commissioners, 21 Pa. 37; Murdock's Petition, 149 Pa. 341; Evans v. Phillipi, 117 Pa. 226; Seifried v. Com., 101 Pa. 200; Malloy v. Com., 115 Pa. 25; Safe Deposit & Trust Co. v. Fricke, 152 Pa. 231; Shroder v. Lancaster, 170 Pa. 136; Com. v. Moir, 199 Pa. 534.

The act of 1901 is not, nor was it intended to be, a complete and exclusive system for the government of cities of the second class, and it does not repeal the local act of 1859: Com. v. Moir, 199 Pa. 534; Com. v. Macferron, 152 Pa. 244; McHenry's Petition, 6 Pa. Superior Ct. 464; White v. Meadville, 177 Pa. 643; Smith v. People, 47 N. Y. 330; Phila. v. Sciple, 31 Pa. Superior Ct. 64; Lewis Sutherland Statutory Construction, sec. 443.

The case of Harrisburg v. Gas Company, 31 Pa. Superior Ct. 530, does not rule this case.

The act of 1859 empowers the city of Pittsburg to tax such real estate of railroad companies as is covered by their main tracks: Penn'a. R. R. Co. v. Pittsburg, 104 Pa. 522; Homer v. Com., 106 Pa. 221; McHenry's Petition, 6 Pa. Superior Ct. 464.

Rights of way of a railroad are no longer recognized in a strict sense as public highways: Baldwin on American Railroad Law, p. 113; Hyde v. Missouri Pacific Railway Company, 110 Mo. 272 (19 S. W. Repr. 483); Central Military Tract R. R. Co. v. Rockafellow, 17 Ill. 541.

OPINION BY MR. JUSTICE POTTER, May 4, 1908:

The plaintiffs (appellants) are owners of certain strips of land in the city of Pittsburg, used now and for many years heretofore for their main railroad and tracks, and commonly known as rights of way. The city of Pittsburg, in 1907, assessed and levied a tax upon the said strips, claiming authority to do so under the special Act of January 4, 1859, P. L. 828, which provides that "all real estate situated in said city owned or possessed by any railroad company shall be, and is hereby, made subject to taxation for city purposes the same as other real estate in said city."

The first question that is raised is whether these rights of way are real estate taxable under the act of 1859. That they are in fact real estate under the general legal distinctions of property is not disputed, but it is not clear that they are such real estate as comes within the intent of the authority to tax, given by that act. The original conception of a railroad was that of an improved highway, the right to construct which was a franchise to the company, involving the obligation to furnish motive power for persons and property to all who sought it, even in their own vehicles. Of course, experience soon demonstrated that as vehicles could not pass each other as on ordinary roads, they as well as the motive power must be under the control of one authority, but the conception of the railroad as a public highway has never been changed. As such, it is a franchise not included under general words authorizing taxation of property, real or personal.

No case has been cited which sustains the view adopted by the learned court below. In Penna. Railroad Company v. Pittsburg, 104 Pa. 522, where the act of 1859 was under consideration, it was held that the real estate of the railroad used for offices, passenger and freight stations, etc., although necessary conveniences for the enjoyment of the franchise, were taxable under the act. But the distinction is plain. Depots, stations, offices, etc., are necessary, but depots, etc., in any particular place are matters of convenience only, while the right of way is essential to the life of the franchise itself, and having once been located is no longer open to the general authority to change.

Not only has no case been found to support the view of the court below that the rights of way should be included with other real estate subject to taxation, but the contemporary construction of the statute has been uniformly the other way. The city of Pittsburg itself made no attempt to assert such a construction for nearly half a century after the passage of the act. The legislature is presumed to use language in its generally accepted meaning at the time. Contemporanea expositio fortissima est in lege, and it is perfectly clear that in 1859 the term real estate, as a subject of taxation, was not understood to include the essential instrumentalities of a franchise such as the right of way of a railroad.

The second and larger question in the case is whether section 3 of the act of 1859 was repealed by the Act of March 7, 1901, P. L. 20.   The case of Harrisburg v. Gas Co., 219 Pa. 76, is cited as authority for the view that it has been so repealed. There the act of 1889 was held to furnish a complete system for the government of cities of the third class, which was inconsistent with the provisions of the earlier acts, authorizing the city to levy taxes on all real estate of corporations within its limits.   If we compare the act of 1889, which was involved in the Harrisburg case, with the provisions of the act of 1901, which is here involved, it will appear that the property subject to tax is identical; so are the provisions for assessment and collection of taxes; and that both acts provide for the election of assessors,—the Act of 1901, art. 6, P. L. 26, by reference to the earlier Act of July 9, 1897, P. L. 219, and also by art. 12, sec. 1, par. 7, P. L. 33.   But in this respect the act of 1901 does not contain a complete system in itself, and differs from the Act of 1889, art. 15, sec. 1, P. L. 317, which contains such provisions without reference to prior legislation.

Then again, the Act of 1889, art. 15, secs. 8, 9 and 10, P. L. 319, designates the officers to whom taxes should be paid, the manner of enforcing payment, and penalties for failure to pay. The Act of 1901, art. 19, sec. 3, par. 2, P. L. 40, authorizes cities of the second class to provide for the assessment and collection of taxes, but does not designate any officer to collect, nor manner of enforcing payment, nor penalties ; but art. 7, P. L. 26, provides that "the city treasurer shall receive the proceeds of all public loans, and shall demand and receive from the proper officers, all moneys payable to the city from whatever source, and pay all warrants duly issued and countersigned ; the receipt and collection of funds derived from assessments, taxes, water rents, licenses, permits and rents, from markets, landings, wharves and other public property, excepting delinquent taxes and water rents, shall be attached and subordinate to this department and subject to its supervision, control and direction."   It will be seen that the act of 1901 is far short of the act of 1889, in the establishment of a complete system for the assessment and collection of taxes.

Then as to delinquent taxes, the act of 1889 provides a complete system : Art. 15, sec. 11 et seq., P. L. 320.   The act of

1901 makes no provision as to collection of delinquent taxes except by reference to prior acts, as follows: Art. 5, sec. 1, P. L. 20: " The collector of delinquent taxes shall be the head of the department of delinquent taxes, and all laws and ordinances in force prior to the passage of this act, relative to said office and collection of delinquent taxes, shall be and remain in full force."

The act of 1889 contains a complete system as to registry of " the ownership of all real estate liable to municipal taxation or assessment: " Article 16, P. L. 328. The act of 1901 is silent on this subject, and the local Act of February 24, 1871, P. L. 126, is still in force: Safe Deposit & Trust Co. v. Fricke, 152 Pa. 231.

Numerous provisions on other subjects in the act of 1889, making it a complete system as to cities of the third class are, in the act of 1901, either omitted altogether or supplied by reference to existing laws.

As set forth by counsel for appellee, the act of 1889 contains four articles providing for incorporation of cities, creation into wards, annexation of territory and general provisions. The act of 1901 is silent on these subjects. Corporate powers are the same in both. The legislative department is complete in the act of 1889. In that of 1901 the election of councils and ratio of representation are not fixed, but depend on other acts, and there is no reference to the passage of legislative acts. The powers of the executive are much fuller in the act of 1889 than in that of 1901, and there is in the act of March 7, 1901, no provision for veto power, nor anything showing that any ordinances were to be submitted to the recorder, except appropriation ordinances, and even as to them the proceedings of the recorder's veto are such as are prescribed by law for the passage of bills over the city recorder's veto, and there is no provision in the act for such passage. The absolute lack of legislation on the most vital matter of city government, namely, the methods of passing ordinances and resolutions, is shown by the subsequent amendment of June 20, and its very detailed provisions in reference thereto. (See act of 1901, page 591.) The act of 1889 provides for the treasurer and controller, and the act of 1901 does the same, but not so fully. The act of 1889 contains an article on board of health. The

act of 1901 is silent as to the scope and powers of the board. The act of 1889 contains an article on water and lighting departments, sewerage, exercise of eminent domain, and on these subjects the act of 1901 is silent, except the mere statement in Art. IV, that waterworks, gas and electric plants are under the department of public works. The act of 1889 contains (art. XV) over ten pages on taxation and municipal claims. The act of 1901 contains an article (VI) of less than a page on assessors, and preserves the act of 1897, and does not contain a word on the other subjects treated in art. XV of the act of 1889. And so, without going further into the tedious details of comparison, it would seem that these instances amount to a demonstration that the act of 1901 is not a complete system ; and, therefore, the reasoning in Harrisburg v. Gas Co., 219 Pa. 76, based upon the idea that the act of 1889 was a complete system, cannot apply to nor control this case.

But in any event the act of 1901 includes within its system the act of 1859 and saves it in terms. This will appear if we turn to art. VI of the Act of 1901, P. L. 26, under " Department of Assessors," creating a board of revision of taxes, which contains the following proviso : " Nothing herein contained shall be construed to repeal the act of July 9, 1897, providing for the classification of real estate and other property for the purposes of taxation, and for the election of assessors, and prescribing the duties thereof, in cities of the second class, except so far as the same is inconsistent herewith." Now sec. 2 of the Act of July 9, 1897, P. L. 220, provides as follows as to the board of revision of taxes : " That the present board of assessors in any such city, or their successors when elected, shall make an assessment of all the subjects of taxation now by law, or which may hereafter be made subject to taxation for city purposes, and they shall take as the basis of such assessment, the last preceding assessment made by the board of assessors for such city, and shall have power to revise, equalize or alter such assessment by increasing or reducing the valuations, and to add to such lists of assessments any subjects of taxation as aforesaid omitted therefrom, and fix the taxable valuation thereof." This is the statute and section under which the assessors proceeded in the present case. They had authority to add to the list of subjects of taxation any real estate of the

railroad omitted from the prior lists, subject "now by law" to taxation under the act of 1859. But this, as we have pointed out, did not, in our judgment, include the real estate comprised in the right of way.

Section 3 of the act of 1897 provides: "When the board of assessors shall have altered and amended the lists of all taxable property so as to arrive at its true cash value, they shall then ascertain the aggregate amount of the value of the entire taxable property of said city, which valuation shall remain the lawful valuation for purposes of city taxation, until altered as herein provided."

Article 19 of the Act of 1901 provides, P. L. 39 : "The corporate powers, and the number, character, powers and duties of the officers of cities of the second class, now in existence by virtue of the laws of this Commonwealth, shall be and remain as now provided by law, except where otherwise provided by this act."

It should also be noted, that the power to levy and collect taxes on all property "taxable according to the laws of the State of Pennsylvania for county purposes," as provided by section 3, P. L. 40, is in addition to those which are "now provided by law," and not in substitution thereof.

The supplemental Act of June 20, 1901, P. L. 586, shows that the purpose of the legislature was not to repeal any prior acts except the act of 1887, relating to cities of the second class, secs. 1 and 2 of this act being saved also.

We are of the opinion that section 3 of the Act of January 4, 1859, P. L. 828, is not repealed and is in force, but that in the light of prior judicial decisions, and the contemporaneous construction of the act, as shown by the fact that for nearly half a century after its passage, no attempt was made by the city of Pittsburg to assess for taxation the rights of way, it was not the intention of the legislature to include within the meaning of the words "real estate" as used in the statute, the ground comprised within the rights of way. If it be the policy of the law to make such property subject to local taxation, the legislature should make it clearly apparent.

Decrees reversed, bills directed to be reinstated, and injunction awarded against the collection of taxes upon the rights of way. Costs to be paid by appellees.