# Federal Street & Pleasant Valley Passenger Railway Company, Appellant, *v.* Pittsburg.

226   419
f226   429

*Taxation—Municipalities—Street railways—Real estate—Pittsburg and Allegheny City—Acts of January 4, 1859, P. L. 828, and February 7, 1906, P. L. 7.*

1. While taxation is an incident of sovereignty absolutely necessary to maintain government, the authority to impose taxes depends upon express legislative grant and not upon incidental governmental power. There is no such thing as taxation by implication. The burden is always upon the taxing authority to point to the act of assembly which authorizes the imposition of the tax claimed.

2. The real estate of a public or quasi public corporation such as a street railway company, essential to the exercise of its corporate franchises, is not subject to assessment and taxation for local purposes in the absence of legislative authority imposing such taxes.

3. There is nothing either in the Act of January 4, 1859, P. L. 828, or in the Act of February 7, 1906, P. L. 7, or any other act, which authorizes the consolidated city of Pittsburg to tax the real estate of a street railway company situated in the city of Allegheny, and necessary and essential for the exercise of the franchises of the company for local purposes.

4. The consolidated city of Pittsburg has the power to levy and assess taxes upon all taxable subjects just as those subjects of taxation existed at the time of the consolidation, but has no power to extend the territorial limits of the local act of 1859 so that a new subject of taxation will be created and property made taxable in a locality where neither by general or local laws was such property ever taxable before.

Argued Oct. 25, 1909. Appeal, No. 108, Oct. T., 1909, by plaintiffs, from decree of C. P. No. 2, Allegheny Co., April T., 1909, No. 1,021, dismissing bill in equity in case of Federal Street & Pleasant Valley Passenger Railway Company and Pittsburg Railways Company v. City of Pittsburg and John F. Steel, Treasurer, and L. R. Goshorn, Delinquent Tax Collector. Before Fell, Brown, Mestrezat, Potter, Elkin and Stewart, JJ. Reversed.

Bill in equity for an injunction to restrain the city of Pittsburg from collecting taxes on real estate of the plaintiffs situated in the city of Allegheny, and having erected thereon a power house. Before Shafer, J.

A demurrer was filed to the bill and sustained by the court.

*Error assigned* was decree dismissing the bill.

*Samuel McClay,* of *Reed, Smith, Shaw & Beal,* for appellants.—The act of 1859 is confined to the territory of the city of Pittsburg as it existed at that date, except where extended by special acts: Wheeler v. Philadelphia, 77 Pa. 338; Vulcanite Portland Cement Co. v. Allison, 220 Pa. 382.

Special and local acts of the character of those of 1859 and 1870 are territorial in effect: Parsons v. Winslow, 1 Grant, 160;

Clifford v. Belsterling, 2 S. & R. 108; Irwin v. McCallin, 28 P. L. J. 322; Malloy v. Com., 115 Pa. 25; Nissley v. Lancaster County, 215 Pa. 562.

Since the adoption of the constitution of 1874, the legislature could not pass a law extending the act of 1859 beyond the limits of the city of Pittsburg, as it existed at the adoption thereof: Evans v. Phillipi, 117 Pa. 226.

The car barn of the appellant was not taxable for city purposes prior to the consolidation of the two cities, and is not taxable now unless under the Act of January 4, 1859, P. L. 828: Philadelphia v. Traction Co., 208 Pa. 157; New York & Erie R. R. Co. v. Sabin, 26 Pa. 242; West Chester Gas Co. v. Chester County, 30 Pa. 232.

*Lee C. Beatty,* with him *C. A. O'Brien,* for appellees.—The corporate existence, and all the corporate powers, of the city of Allegheny ceased upon its annexation to the city of Pittsburg: Mt. Pleasant v. Beckwith, 100 U. S. 514.

The power to tax real estate of railroads under the special Act of January 4, 1859, P. L. 828, relating to the city of Pittsburg, is a corporate power, and not an act limited to its territorial limits at the time of the passage of that act, and its power to tax extends to that portion of the city which was formerly the city of Allegheny: Pennsylvania R. R. Co. v. Pittsburg, 104 Pa. 522; Penna. R. R. Co. v. Pittsburg, 221 Pa. 90; Hewitt's App., 88 Pa. 55; Pittsburg's Petition, 217 Pa. 227; Norristown v. Pass. Ry. Co., 148 Pa. 87; Greenfield Ave., 191 Pa. 290; Emsworth Borough, 5 Pa. Superior Ct. 29; New Brighton Borough v. Biddell, 201 Pa. 96; Pinkerton v. Traction Co., 193 Pa. 229.

This power to tax real estate of railroads extends to a tax levied by the present city of Pittsburg on railroad property in the former city of Allegheny, for the purpose of paying the pre-existing indebtedness of the former city of Allegheny: Mt. Pleasant v. Beckwith, 100 U. S. 514.

This power to tax real estate of railroads also extends to a tax levied by the present city of Pittsburg, for the purpose of raising money for the use of the central board of control hav-

ing in charge the Allegheny city school district: Com. ex rel. v. Pittsburg, 209 Pa. 333; Com. v. Shaw et al., 96 Pa. 268; Mellor v. Pittsburg, 201 Pa. 397; Com. v. Macferron, 152 Pa. 244; Com. v. Wyman, 137 Pa. 508.

The car barn of a street railway company is taxable as real estate under said act of 1859: Philadelphia v. Traction Co., 206 Pa. 35; Penna. R. R. Co. v. Pittsburg, 221 Pa. 90.

OPINION BY MR. JUSTICE ELKIN, January 3, 1910:

A statement of a few rules and principles of law about which there is and can be no dispute will be helpful to a proper understanding of the questions involved in this proceeding. While taxation is an incident of sovereignty absolutely necessary to maintain government, the authority to impose taxes depends upon express legislative grant and not upon incidental governmental power. There is no such thing as taxation by implication. The burden is always upon the taxing authority to point to the act of assembly which authorizes the imposition of the tax claimed. Taxation is a sovereign state governmental power not possessed by municipalities or municipal divisions unless delegated to them. In other words, municipalities have no implied power of taxation and must look to the statutory grant for such authority as they possess in the imposition of taxes. In Pennsylvania it has been uniformly held that the real estate of a public or quasi public corporation essential to the exercise of its corporate franchises is not subject to assessment and taxation for local purposes in the absence of legislative authority imposing such taxes. Prior to the consolidation of the two cities the property in question was not subject to assessment and taxation as real estate. It was located in what was formerly the city of Allegheny, and no act of assembly, general or local, was ever passed subjecting property of the kind involved in this proceeding to taxation as real estate in that city. This is not an attempt to evade the payment of taxes upon property which other like corporations throughout the commonwealth are compelled to pay, but appellants complain that they should not be subjected to taxation upon property never taxed before and which is not

taxed in any other part of the commonwealth unless located within the limits of some district in which prior to the adoption of the new constitution the legislature had expressly provided that property of the kind here involved should be a subject of taxation for local purposes like other real estate in the locality affected. No exemption is claimed from the payment of taxes expressly imposed by statute and ordinarily paid throughout the commonwealth, but resistance is made to the imposition of new burdens limited to the local district and not generally borne by other like corporations in other parts of the state. With these facts, axiomatic and fundamental principles in mind, let us proceed to a consideration of the merits of the controversy here involved. While in the preparation and consideration of the case by counsel and court many collateral, incidental and material matters have been discussed, the real question is within narrow limits. It is all a question of authority for the imposition of the new burden. If the consolidated city of Pittsburg has the authority to tax the property in question that is an end of the case; but if it does not possess such power its right to impose the taxes in question does not exist. There is no general tax statute subjecting the property here involved to taxation, and we must look elsewhere for the authority if in fact there be any. The contention of the city is that by the consolidating Act of February 7, 1906, P. L. 7, and the local Act of January 4, 1859, P. L. 828, applicable to the old city of Pittsburg, such power was either expressly conferred upon the municipality or results by necessary implication. The answer to this position must be found in the acts themselves. Some confusion has arisen by an indefinite and somewhat loose use of the term governmental powers. Of course if the city has been delegated the municipal governmental power to create new subjects of taxation or to extend old ones no one could question its right to exercise the power so possessed. This is the pinch of the case. Governmental power is a broad and comprehensive term, the extent and degree of which depend upon the authority asserting it. Sovereign state governmental power is one thing and delegated municipal power quite another. The first is only restrained

in its exercise by constitutional limitations, the second is entirely restricted by its grant and does not extend beyond the limitations imposed by the statute conferring it. Sovereign power is state wide while municipal power is limited to the localities affected. The act of 1859 was local, applicable only to the city of Pittsburg, and was passed for the purpose of enabling that city to raise additional revenue. It seems to have been carefully drawn, and the draughtsman evidently had in mind the distinction which has always been made between the power to levy and collect a tax and the power to create a new subject of taxation. This thought is clearly expressed in that act. By the first, second and fourth sections the power to levy, assess and collect certain licenses and taxes is expressly conferred upon the select and common councils of said city. In the third section no such power is conferred, but the legislature giving expression to the sovereign power of the state created a new subject of taxation within the territorial limits of that city for certain purposes. This is what the legislature did, and the city obtained no greater right than the statute gave which was the authority to treat certain kinds of property not theretofore taxable as a subject of taxation. The authority to levy and assess a tax against the property thus subjected to taxation was not conferred upon city councils by the act of 1859, which only provided as to real estate belonging to railroads that it shall be subject to taxation for city purposes like other real estate in said city. Other real estate in said city was not taxable under that act but under other general statutes which also gave authority to levy and assess. It seems perfectly clear, therefore, that the old city of Pittsburg never had conferred upon it the municipal power to create property of the kind in question into a taxable subject. The legislature had the power prior to the adoption of the constitution of 1874 to subject this kind of property to taxation either in local districts or throughout the commonwealth. In this instance it exercised the power in the old city of Pittsburg as it had the right to do, but it is important to keep in mind that the legislature exercised the power directly and did not delegate it to the municipality to be exercised as the councils thereof

might deem proper. There is good reason for the legislative distinction made between section three and the other three sections of the act of 1859. From the beginning of our state government real estate has been considered a primary source from which necessary revenues may be derived. Real estate is everywhere and is the basis of taxation in every municipal division, large or small. The right to use, enjoy and possess real estate lies at the foundation of the peace, comfort and happiness of our people. This right and the burdens which accompany it should be defined and fixed by general laws applicable as nearly as may be throughout the whole commonwealth. For this reason it has been the policy of our state to subject real estate to taxation by general statutes so that it will everywhere be treated upon the same basis. If it were not so and the policy prevailed of the state delegating this power to municipalities much confusion would arise and no uniformity could be maintained. If municipalities had this power to exercise, each one would act from the standpoint of its own necessities, requirements and ideas of local governmental conditions in the creation of taxable subjects, and we would have new and different subjects of taxation at every municipal division line. Such a condition would be deplorable and it never has been the policy of our state to confer such power upon municipal governments except in rare and exceptional instances, and when so done the power was expressly conferred by the statute. Real estate throughout the commonwealth is made subject to taxation by the acts of 1834 and 1844 and other supplemental legislation of a general character. Prior to that time real estate was taxed under general laws now repealed. The authority to levy and assess a tax is a very different thing from the power to create a taxable subject. Levy and assessment have to do with the rate and valuation and the method of fixing the amount of the tax, while the taxable subject is the res, that is, the property or thing upon which the levy and assessment operate and against which the tax is levied. The act of 1859 did not delegate to the select and common councils of the city of Pittsburg the power to provide by ordinance or otherwise that real estate

in general and the kind here involved in particular should be made a taxable subject, nor did it authorize city councils to levy and assess taxes against such property. All it did was to provide that property such as is here involved should be subject to taxation within the limits of that city, subject, of course, to the municipal power granted by other statutes to levy and assess taxes against it in the same manner as taxes were levied and assessed against other real estate. We therefore hold that no municipal governmental power was conferred upon the councils of the city of Pittsburg by the act of 1859 to subject property of the kind in question to taxation, and that such property only became a subject of taxation by the exercise of the sovereign power of the state through the legislature. This is the answer to the very able argument made by learned counsel for appellees in which it is contended that the city possessed this governmental power, which expanded with the expansion of the city. A power never possessed can not expand. It is clear from what has been said that the act of 1859 is a local act subjecting certain kinds of property to taxation within the territorial limits of the locality affected. If it expanded it was not by reason of the expansion of a governmental power but because the territorial limits of the city expanded. This view does not seem to be very confidently pressed. If it be the rule that a local act limited at the time of its passage to a particular city, or county, or township, expands with municipal expansion, it would follow as of course that it contracts with the contraction of territorial limits, for if the rule be sound it must work both ways. In other words, if the two cities involved in this case had been consolidated by annexing the old city of Pittsburg to Allegheny, under the rule sought to be invoked here, all local acts in the annexed city would be inoperative because the municipality to which they applied would then no longer exist. Such a result is not necessary under any proper rule of construction, and no decided case has been called to our attention to warrant such a conclusion. Or, again, let us assume that within constitutional limitations it were possible to divide one county into four counties and that the division was affected while a local act

was in force in the parent county, what would result as to the application of the local act under such circumstances? Would it apply only in that part of the original county left after carving out the three new counties, or would it still apply to all of the territory included in the parent county unaffected by the division? The safer and sounder rule is that it applies to the entire territory, no less and no more, to which the legislature made it applicable, and that these territorial limits are not affected by subsequent changes of municipal division lines. This is the doctrine of Parsons v. Winslow, 1 Grant, 160, and Clifford v. Belsterling, 2 S. & R. 108. This has also been the recognized rule in dealing with local prohibitory liquor laws. It is sound and should not be disturbed. Then in addition there are the constitutional barriers that no local act shall be passed regulating the affairs of counties, cities, townships, wards, boroughs and school districts; also that other provision that so much of any law as may be revived, amended, extended or conferred shall be re-enacted and published at length, which was not done in this case. The legislature could not have done directly what is claimed to have been done indirectly in the case at bar, that is, extend the operation and territorial limits of a local act by a general statute. It is true that the territorial limits of the act of 1859 were extended several times prior to the adoption of the new constitution when additional territory was added to the city of Pittsburg, but this result was accomplished by the express provisions of the acts authorizing the consolidation and extensions. The taxation of this kind of real estate under the act of 1859 was purely local, and we find nothing in the consolidating act of 1906 which in any way affected its purpose or attempted to extend its territorial limits. So far as the consolidating act is concerned it left all subjects of taxation just as they were at the time it was passed and as they existed when the consolidation was effected. The consolidated city is now as it was before the consolidation took place, a city of the second class with power to levy and assess taxes conferred upon such cities, but without power to create a taxable subject in certain kinds of real estate not made taxable by general law. The argument of convenience and the

suggestion of confusion are advanced as a reason for holding that the provisions of this local act should be extended into new territory never covered by it. It is suggested that by so holding the constitutional requirement of uniformity in taxation would be more nearly approached, but this is a two-edged sword because if uniformity is the goal to be attained this result can best be accomplished by the repeal of the local act of 1859 and then this kind of property would be uniformly taxed throughout the commonwealth. However, the argument of convenience cannot prevail when the legal rights of parties are involved. Many embarrassing questions arise out of the consolidation of different municipalities and districts when governed by local and inconsistent laws, but these are the burdens and inconveniences assumed in the accomplishment of greater things. The consolidated city has the power to levy and assess taxes upon all taxable subjects just as those subjects of taxation existed at the time of consolidation, but has no power to extend the territorial limits of a local act so that a new subject of taxation will be created and property made taxable in a locality where neither by general or local laws was such property ever taxable before. For the reasons hereinbefore stated and others that might be added we think the city was without authority to tax the property of appellants located in the city of Allegheny, that is the particular property involved in this proceeding for city purposes under the act of 1859.

Decree reversed, bill reinstated and record remitted with directions to enter such decree in accordance with the views herein expressed as will protect the rights of the parties. Costs to be paid by appellees.