Pittsburgh Junction Railroad Company *v.*
Pittsburgh et al., Appellants.

Argued March 20, 1945. Before MAXEY, C. J., DREW,
LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

reargument refused June 29, 1945.

*Bennett Rodgers,* Assistant City Solicitor, with him
*Anne X. Alpern,* City Solicitor, for appellants.

*Vincent M. Casey*, with him *Margiotti & Casey*, for appellees.

Opinion by Mr. Justice Linn, May 21, 1945:

These appeals by the City of Pittsburgh are from decrees in the suits brought by Pittsburgh Junction Railroad Company and by the Baltimore and Ohio Railroad Company in Pennsylvania to restrain the city from collecting certain taxes assessed against plaintiffs' real estate in the City of Pittsburgh; to decree the assessments void; and to direct the refund of taxes paid under protest. The decrees are in accord with the prayers of the bills but must be reversed.

The right to assess railroad real estate was conferred on the city by the local and special Act of January 4, 1859, P. L. 828, entitled "An Act to enable the city of Pittsburgh to raise Additional Revenue." Section 3 provides "That all real estate situated in said city, owned or possessed by any railroad company, shall be and is hereby made subject to taxation for city purposes the same as other real estate in said city." The term "real estate," as used in that act, came up for construction in appeals reported as *Pennsylvania Railroad Co. v. City of Pittsburgh*, 104 Pa. 522. It was held that the term was used in the statute with the intention of authorizing taxation of railroad real estate theretofore not subject to local taxation such as land, building and improvements considered essential to the exercise of the franchises of public service corporations but not being, like right of way, part of the corporate franchise. Compare *Penna. R. R. Co. v. Pittsburgh*, 221 Pa. 90, 70 A. 271; *Phila. v. Electric Traction Co.*, 208 Pa. 157, 57 A. 354; *Phila. v. Phila. etc. R. R. Co.*, 38 Pa. Superior Ct. 529.

When the Act of 1859 was passed, the area now included in the sixth and the fifteenth wards was not part of the city. Those areas became part of the city in 1868 by proceedings pursuant to the Act of April 6, 1867, P. L. 846, and the Act of April 1, 1868, P. L. 565.

The real estate involved in the suits is in three different wards [1] of the city, the first, sixth and fifteenth wards. With respect to the property in the first ward, the city's power to tax is conceded; the only question is whether, out of the large area occupied by the Smithfield Station of the Baltimore and Ohio Railroad Company with tracks, platforms, facilities, etc., a part of the tract, assessed in two parcels, should have been exempted as slope alleged to constitute part of the right of way. Plaintiff raises no question of the right to assess so much of the real estate at this location as is not part of the right of way.

The plaintiff railroads recognize that, to sustain their bills, a want of power to tax must appear and, to support their suits, contend that this want of power is shown by the fact that the sixth and fifteenth wards were not part of the city when the Act of 1859 was passed. In those wards their property consists of land on which they have constructed railroad yards, switching tracks, workshop, warehouse, round house, locomotive repair shop, and certain main tracks on what the city concedes to be exempt right of way.

We shall first consider whether the right, conferred by the Act of 1859, authorized taxation of plaintiffs' real estate in the areas brought within the new city limits in 1868. The answer of course depends on what the legislature provided. The power of the legislature to authorize such taxation must be conceded: *Appeal of Hewitt,* 88 Pa. 55, 59; *Pittsburgh's Petition,* 217 Pa. 227, 229, 66 A. 348.

The enabling legislation shows clearly that the legislature intended that the powers theretofore vested in the city, one of which was the power to tax railroad real

_____

[1] As it appears that the Pittsburgh Junction Railroad Company is a subsidiary of the Baltimore and Ohio Railroad Company, it is unnecessary, in view of the condition of the record, now to specify which of the two railroad companies owns particular tracts of land.

estate, were intended to be vested in the city as enlarged. The title to the Act of 1867 is "A Further Supplement To the acts incorporating the city of Pittsburg, extending its boundaries, enlarging its corporate powers and perfecting its municipal organization, and submitting the proposed consolidation to a vote of the people." The title to the Act of 1868 is "An Act Supplementary to the acts incorporating the city of Pittsburg." Section 21 of the Act of 1868 [2] provides "That all laws and ordinances relating to the city of Pittsburg, which were in force at the time of the passage of the aforesaid act of April sixth, one thousand eight hundred and sixty-seven, and which have not been subsequently repealed or supplied, are hereby declared to be and remain in full force and applicable to said city as consolidated by said act."

The legislative declaration that "all laws and ordinances relating to the city of Pittsburgh . . . are hereby declared to be and remain in full force and applicable to said city as consolidated by said act," includes the power to assess railroad real estate for local purposes conferred by the Act of 1859. We should have assumed that there could be no doubt of that but for the conclusion of the learned court below. We have therefore considered the subject. The learned judge said: "Section 21 of the Act of 1868 does not expressly make the Act of 1859 applicable to new territory then brought within the confines of the City. It simply extends to the consolidated City the benefit of laws in force at the time of con-

---

[2] Though relating to the annexation of different territory from that included in the sixth and fifteenth wards, it is not without interest to note that in a statute authorizing consolidation of adjacent territory approved May 10, 1871, P. L. 718, it was provided: ". . . and the territory thus admitted and the inhabitants thereof shall thereafter be subject to all the laws and ordinances relating to the city of Pittsburg; and all the laws and ordinances of any borough or township so admitted, inconsistent with the laws and ordinances of said city of Pittsburg, shall thereafter be null and void."

solidation. To hold that it gave the City authority to tax railroad properties not subject to taxation before consolidation with the City would be imposing a tax upon a new subject of taxation without clear and express words for that purpose, by implication only. So far as the consolidating Act is concerned it left all subjects of taxation as they were when it was passed and as they existed when the consolidation was affected. The consolidated City was not given power to create a taxable subject on certain kinds of real estate not made taxable by the general law."

We must reject that conclusion. This court has said precisely the contrary in speaking of the effect of the Act of 1859. In *Passenger Railway Co. v. Pittsburg,* 226 Pa. 419, 427, 75 A. 662, Mr. Justice ELKIN said: "It is true that the territorial limits of the act of 1859 were extended several times prior to the adoption of the new constitution when additional territory was added to the city of Pittsburg, but this result was accomplished by the express provisions of the acts authorizing the consolidation and extensions." This case, we may add, dealt with territorial enlargement of Pittsburgh pursuant to a statute passed after the adoption of the Constitution of 1874. The statute was therefore subject to constitutional limitations, imposed by Article III, which were not applicable when the Act of 1859 was passed. Probably for that reason the enabling Act of 1906 does not contain a provision such as section 7 of the Act of 1868.

The legislative expression, in the Act of 1868, "all laws . . . relating to the city of Pittsburgh . . ." includes a local and special law if words be given their usual meaning; no reason has been suggested for giving them any other meaning.

This brings us to the other phase of the case dealing with the right to proceed by bill instead of by appeal from the assessment. The city exercised its power to tax plaintiffs' real estate. Plaintiffs contend that greater

exemptions for right of way should have been made. For over-assessment or under-exemption the law provides a trial by appeal to the common pleas: *First Baptist Church of Pittsburgh v. Pittsburgh*, 341 Pa. 568, 570, 20 A. 2d 209; *Wynnefield United Presbyterian Church v. Phila.*, 348 Pa. 252, 35 A. 2d 276; *Dougherty, Trustee, v. Philadelphia*, 314 Pa. 298, 171 A. 583.

Such appeals were taken by the plaintiffs. The records of the appeals were offered in evidence. They came on for hearing at a Pre-Trial Court. As the procedure was the same, we shall refer to one of them as typical. Civil Procedure rule 212 provides for pre-trial conference. Among other provisions, the rule states: "The court may make an order reciting the action taken at the conference, the amendments allowed to the pleadings, and the agreements made by the parties as to any of the matters considered, and limiting the issues for trial to those not disposed of by admissions or agreements of the attorneys. Such order when entered shall control the subsequent course of the action unless modified at the trial to prevent manifest injustice." At the pre-trial hearing, the plaintiffs and the city agreed on what the assessment should be; the order of the court, establishing the assessment in the amount agreed to became a judgment,[3] and that judgment became final. The appel-

---

[3] The following order was made: "AND NOW, to wit, this 9 day of April 1941, this case having been called for hearing in open Court, before the Pre-Trial Court, after full discussion of the merits, and by agreement by and between Margiotti, Evans & Pugliese, attorney for the appellant, and William Alvah Stewart, City Solicitor, and Louis Dadowski, Assistant City Solicitor, Attorneys for the Board of Assessors, acting as a Board of Revision, of the City of Pittsburgh, in accordance with resolution duly passed by the Board of Assessors authorizing the City Solicitor and Joseph Kocurkovic, a member of said Board, to submit to Pre-Trial Judge for decision, it is ordered, adjudged and decreed that the City assessment upon the property described at the above number and term be fixed at $2,199,280 on the land.

"Said valuation to be for the years 1940, 1941 and 1942. The costs to be paid by appellant.    By the Court    R. A. S."

late proceeding ended at that point. Plaintiffs paid the taxes on the assessments so established. While the record states the taxes were paid under protest and that the decree ordered repayment, we are not advised how, in the circumstances of these cases, the protest can be given any effect.

The bills should have been dismissed because (1) the power to tax plaintiffs' real estate is clear, and (2) the appeals charging over-assessment and under-exemption were determined by the judgment of the pre-trial court.

In each case the decree is reversed. and the bill is dismissed; costs to be paid by the appellee.