## Sims v. Christiana et al.

*Joseph A. Zane*, for plaintiff.

*James P. Bohorad* and *Harold L. Paul*, for defendants.

DALTON, J., July 27, 1954.—This trespass action arises out of a collision between a railroad train and a motor vehicle at a private grade crossing. Plaintiff, a member of the train crew, was injured when he jumped from the front of the train in an effort to avoid being crushed in the collision.

The averments of the complaint depict the following situation. A branch line of the Reading Company's railroad extends in a northeastwardly direction from Girardville to Shenandoah, both in Schuylkill County. At the time of the accident, the railroad was intersected by a private crossing, which plaintiff alleges was "being used by and under the control of" defendant, Hammond Coal Company, by virtue of an agreement between Hammond and Reading Company. Hammond had entered into a contract with defendant, Angelo Christiana, whereby Christiana was to remove and haul rock and coal dirt from a strip mine then being worked by Hammond. Christiana owned the motor vehicle involved in the accident, which at the time was being operated by Christiana's employe, Michael McGuire, who is also a defendant.

On the date of the accident, July 25, 1951, at about 9:30 a.m., plaintiff, who was a brakeman employed by the Reading Company, was standing on the front platform of a caboose which was being pushed together with five coal cars by a locomotive owned and operated by Reading Company. When the train reached the aforesaid private crossing it collided with the motor vehicle owned by Christiana and operated by McGuire. It is alleged that "the plaintiff, upon

seeing that a collision was inevitable was compelled to jump from his position on the front platform of the caboose, to prevent his being caught between the motor vehicle and the caboose". In jumping, he sustained personal injuries for which he now seeks damages from defendants, Christiana, McGuire and Hammond. He charges Hammond with negligence on the sole ground of:

"Failure to provide a watchman or furnish other warning signals to truck drivers of any approaching trains when the defendant (Hammond) knew or should have known that the said railroad crossing was dangerous and that visibility of oncoming trains was limited."

Defendant Hammond has filed preliminary objections in the form of a motion for a more specific complaint and a demurrer.

Ten reasons have been assigned in support of the motion for a more specific complaint, but only six of them have been pressed upon the argument.

The first two reasons relate to plaintiff's failure to state the manner in which the private crossing was "being used" by defendant Hammond and the manner in which it was "under the control" of Hammond. Under the peculiar circumstances of this case, we think those objections are well taken.

It is important to bear in mind that the vehicle involved in the collision was not owned by Hammond, but by Christiana, and that it was being operated at the time by Christiana's employe, McGuire. While it is alleged that Christiana was under contract with Hammond to haul rock and coal dirt from a strip mine operated by Hammond, there is nothing to indicate that such contract created the relation of master and servant between Hammond and Christiana or between Hammond and McGuire. Plaintiff seeks to fix a duty on Hammond arising solely out of Hammond's alleged use and control of the crossing. In those circumstances,

we think the complaint should state whether the crossing was then being used in connection with the strip mining operation conducted by Hammond or was otherwise being used for the purpose of advancing Hammond's business, and whether Christiana's truck was being used at the time of the accident in carrying out Christiana's hauling contract with Hammond. Or, if the truck was not being used in the performance of Christiana's contract at the time of the accident, was it being operated over the crossing with Hammond's permission? The degree of Hammond's control over the crossing is also important, because control may be so extensive as to carry with it the duties of a possessor of land. See Bitting v. Wolfe, 368 Pa. 167, 169; Williams v. Wolf, 169 Pa. Superior Ct. 628, 631. See also DeRyss v. New York Central R. R. Co. et al., 275 N. Y. 85, 9 N. E. 2d 788.

Did Hammond, by virtue of its agreement with Reading Company, have an exclusive license to use the crossing? Or, independently of that agreement, did Hammond have possession of the land on either side of the crossing, so that by reason of such possession it might exclude others from using the land and consequently, as a practical matter, also exclude them from using the crossing? Those are questions of vital importance in the case, yet the complaint sheds no light upon them.

The third and fourth reasons complain of plaintiff's failure to state whether the agreement between Hammond and Reading Company was oral or written and, if written, to attach a copy to the complaint. Those objections are unfounded. So far as appears, plaintiff's claim is not based on any contractual duty assumed by Hammond but on an alleged common law duty on Hammond to guard the crossing in such a manner as not to create an unreasonable risk of harm to others. In that view of the case, the agreement be-

tween Hammond and Reading Company would be merely evidentiary of the extent of Hammond's control of the crossing.

The fifth reason is that the complaint fails to state whether the train struck the motor vehicle or whether the motor vehicle struck the train. We fail to see the relevance of that objection. Plaintiff was not injured by the collision but as a result of his effort to escape its consequences. See Palmer v. Warren Street Rwy. Co., 206 Pa. 574, 580; A. L. I. Restatement of the Law of Torts, §444. If defendant Hammond owed plaintiff a duty to guard the crossing, it is immaterial whether a breach of that duty resulted in the train striking the motor vehicle or in the motor vehicle striking the train. In either event, plaintiff was imperiled.

Paragraph 19 of the complaint avers that "the plaintiff sustained a fracture of his right ankle, severe and various contusions and abrasions of the arms, legs and right side of the body causing said plaintiff great pain and suffering and resulting in a permanent partial disability to said plaintiff". Defendant objects that the said paragraph fails to set forth the nature and manner of the alleged permanent disability. Clearly, defendant is entitled to known the nature of the disability and the manner in which it presently affects the plaintiff: 3 Standard Pa. Practice (Revised), p. 510.

We come now to the demurrer. We may briefly dispose of Hammond's argument that since plaintiff charges Hammond only with failure to provide a means of warning to truck drivers of approaching trains, such breach of duty, if the duty existed, could create a cause of action only in favor of an injured truck driver but not in favor of an injured member of the train crew. It is obvious that the hazard to be guarded against was a collision between a truck and a train, with consequent likelihood of injury to per-

sons traveling upon the train as well as to the truck driver. Plaintiff, as a member of the train crew, was within the orbit of foreseeable hazard, and therefore within the orbit of duty, if such duty existed: Dahlstrom v. Shrum, 368 Pa. 423, 425.

The more important question is whether sufficient facts have been alleged in the complaint on which to base a duty on the part of Hammond to station a watchman or to furnish other warning signals to truck drivers of approaching trains.

Defendant Hammond argues that it was under no greater duty to post a watchman at the crossing than the railroad company was. That argument overlooks the fact that conduct which would be reasonable care on the part of the railroad company toward users of a crossing is not necessarily reasonable care on the part of a licensee of a private crossing toward the users of the railroad.

A railroad company holds its franchise under a trust for the public benefit: Stoneboro & C. I. Co. v. L. S. Rwy. Co., 238 Pa. 289, 294. It exists by virtue of public authority for the purpose of speedy and economical public transportation of persons and property. For that purpose, a railroad is a public highway: Sharpless et al. v. Mayor of Phila., 21 Pa. 147, 169; Railroad v. Norton, 24 Pa. 465, 469; Erie & North-East R. R. Co. v. Casey, 26 Pa. 287, 307-08; Pa. R. R. Co. v. Pittsburgh, 221 Pa. 90, 93; Lehigh Navigation Coal Co. v. Pa. P. U. C. et al., 133 Pa. Superior Ct. 67, 73-4; Act of February 19, 1849, P. L. 79, sec. 18, 67 PS §451; Pa. Constitution, article 17, sec. 1. Any condition which obstructs its use or which unreasonably endangers the safety of its operation is a nuisance and hence unlawful: Railroad v. Norton, supra, 468-469. The exercise of its public function is paramount to the personal convenience or private economic advantage of any individual: Railroad Company v. Skin-

ner, 19 Pa. 298, 304. The railroad company is under no common-law duty to post a flagman at a crossing Cummings v. Pa. R. R. Co., 301 Pa. 39, but it *is* required to give " ' "timely and sufficient warning" ' " of the approach of its trains by " ' "some suitable and adequate means, adapted to the circumstances" ' ": Miller v. Pa. R. R. Co., 368 Pa. 507, 513. If adequate warning is given, the superior right of travel is in the railroad company, Newhard v. Pa. R. R. Co., 153 Pa. 417, 422, and it is entitled to expect that operators of vehicles about to cross its tracks will heed the warning and yield the right of way. To require a railroad company to post a flagman at every public or private crossing would be unreasonable and might impose upon the company a financial burden so great as to make the performance of its public function impossible: Cf. Railroad Company v. Skinner, 19 Pa. 298, 303.

The status of a licensee of a private crossing is entirely different. The private crossing exists for his private benefit and he must subordinate his activities in connection therewith to the paramount public function of the railroad. He is entitled to expect the railroad company to use reasonable care for his protection, but in turn he owes a reciprocal duty to the railroad company, its employes and its patrons to take such precautions as a reasonable man would take to avoid creating an unreasonable risk of harm to them. He cannot excuse himself from the performance of that duty on the ground that it might entail some financial expense.

The precise question here involved appears to be one of first impression. In considering it, we must advert to fundamental principles. In Kay v. Pa. R. R. Co., 65 Pa. 269, 273, it was said:

"Duties grow out of circumstances, the authorities tell us, and that which in one case would be an ordi-

nary and proper use of one's rights may, by a change of circumstances, become negligence and a want of care."

In Hydraulic Works Co. v. Orr et ux., 83 Pa. 332, 335, Chief Justic Agnew said:

"But it has been often said, duties arise out of circumstances. Hence, where the owner has reason to apprehend danger, owing to the peculiar situation of his property and its openness to accident, the rule will vary. The question then become one for a jury, to be determined upon all its facts of the probability of danger and the grossness of the act of imputed negligence."

Where the measure of care required shifts according to circumstances, the question of defendant's negligence is usually for the jury: Sinn v. Farmers Deposit Savings Bank, 300 Pa. 85, 90. As was said in Francis v. Baltimore & Ohio Railroad Co., 247 Pa. 425, 429; "Where a higher degree of care is demanded under some circumstances than others, and where both the duty and the extent of performance are to be ascertained as facts, a jury alone can determine what is negligent, and whether it has been proved".

The statement last quoted is, of course, subject to the qualification that "the trial judge should not permit an issue of fact to be presented to the jury, where the evidence is such that upon full belief and the drawing of all proper inferences, reasonable men could not reach the conclusion that there was negligence": Bowser et ux. v. J. C. Penney Co., 354 Pa. 1, 3.

It might be unreasonable to expect the licensee of an ordinary private farm crossing to post a watchman to insure that every casual user of the crossing, whether with or without the licensee's consent, would use it in a manner consistent with the safety of persons traveling upon the railroad. But consider the opposite extreme. Suppose that the owner of a mining

property or of a large industrial plant, for the purpose of transporting the product of his mine or of his mill from one point on his land to another, should obtain permission from a railroad company to make a private crossing at a point where visibility was extremely limited and where surrounding noises were so loud or so distracting that a truck driver might readily fail to hear the railroad company's warning of the approach of its trains, and suppose further that in exercising his privilege the licensee should repeatedly and frequently send trucks across the railroad at that point. In such circumstances, a jury might be justified in concluding that reasonable care for the protection of persons and property traveling upon the railroad required the licensee to post a flagman or to install some automatic warning or safety device to control the passage of the trucks over the crossing.

While the facts in the case at bar are not stated with as much precision or particularity as might be desirable, and while, as presently alleged, they fall short of the hypothetical situation last considered, it should be obvious that the court cannot declare as a matter of law that defendant Hammond was under no duty to guard the crossing. That is essentially a jury question. The demurrer is accordingly overruled.

Plaintiff makes several assertions in his brief of argument which do not appear in the complaint. He asserts in his brief that Hammond installed the crossing for the purpose of having trucks cross to and from the strip mine operated by Hammond, and goes on to say: "The defendant knew or should have known that these large trucks were crossing the railroad periodically and that the drivers were not stopping, looking or listening". Had he pleaded those matters in his complaint, he would have presented a much clearer picture of the situation involved. A possessor of land

may be liable for the reckless acts of third persons upon his property where the condition has existed for such a length of time as to give him notice of the dangerous use and he has had opportunity to control their conduct: Stevens et ux. v. Pittsburgh, 129 Pa. Superior Ct. 5, 13.

The principle is expressed in the A. L. I. Restatement of the Law of Torts, §318, as follows:

"If the actor permits a third person to use land or chattels in his possession otherwise than as a servant, he is, if present, under a duty to exercise reasonable care so to control the conduct of the third person as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if the actor (a) knows or has reason to know that he has the ability to control the third person, and (b) knows or should know of the necessity and opportunity for exercising such control."

The same principle is stated more succinctly by section 877(b) of the A. L. I. Restatement of the Law of Torts, as follows: "For harm resulting to a third person from the tortious conduct of another, a person is liable if he . . . (b) permits the other to act upon his premises or with his instrumentalities, knowing or having reason to know that the other is acting or will act tortiously. . . ."

Both of our appellate courts have approved section 318 of the A. L. I. Restatement of the Law of Torts, as a correct statement of the law and have applied it to a variety of circumstances: Honaman et al. v. Phila., 322 Pa. 535; Stevens et ux. v. Pittsburgh, 129 Pa. Superior Ct. 5, aff. 329 Pa. 496; Brogan v. Phila. et al., 346 Pa. 208; Styer et al. v. Reading, 360 Pa. 212; Horner v. Penn Fruit Co., 169 Pa. Superior Ct. 473. For similar decisions prior to the Restatement, see Sanders v. Penna. R. R. Co., 225 Pa. 105; Williams et

ux. v. F. & W. Grand Stores, Inc., 273 Pa. 131, and compare Lineaweaver et ux. v. Wanamaker, 299 Pa. 45. The reasons underlying the rule may be found in Stevens et ux. v. Pittsburgh, 129 Pa. Superior Ct. 5, at pp. 13-16, 19, and require no repetition here. Whether plaintiff's case falls within that principle cannot be determined on the basis of the allegations presently stated in his complaint.

And now, July 27, 1954, the demurrer is overruled. The first, second and eighth objections in support of the motion for a more specific complaint are sustained. Plaintiff is allowed 20 days from this date to file an amended complaint.

And now, July 27, 1954, an exception is allowed plaintiff and bill sealed.

And now, July 27, 1954, an exception is allowed defendant, Hammond Coal Company, and bill sealed.